UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CVI CVF V POOLING FUND I LP, a Delaware LP ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SOCIÉTÉ GÉNÉRALE S.A., a French Société ) <br> Anonyme, and ) <br> XIAOMI H.K. LIMITED, a Hong Kong Limited ) <br> Company ) <br> ) <br> Defendants. ) | Case No.: <br><br> ECF CASE |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, Plaintiff CVI CVF V Pooling Fund I LP ("CVI," or Plaintiff") brings this action for declaratory and injunctive relief against Defendants Société Générale S.A. ("SG") and Xiaomi H.K. Limited ("Xiaomi") and alleges as follows:

**NATURE OF ACTION**

1. This dispute arises under an irrevocable standby letter of credit (the "Letter of Credit," attached hereto as **Exhibit 1**), issued by SG for the account of CVI, in favor of Xiaomi, as beneficiary.

2. CVI provides lending facilities to Tekmovil, LLC ("Tekmovil") for the operation of Tekmovil's business and secured the Letter of Credit in respect of certain invoices pertaining to Tekmovil's purchase and distribution of mobile phones manufactured by Xiaomi to be sold in Mexico.

3. On February 20, 2024, Xiaomi sent SG a statement of claim (the "Certification Statement" attached hereto as **Exhibit 2**), attempting to draw $7,976,010.80 on the Letter of Credit.

4. In the Certification Statement, Xiaomi falsely alleges that there is a sum due and payable to it from Tekmovil, LLC. Xiaomi's Statement of Claim fails to account for the fact that Xiaomi is indebted to Tekmovil in an amount greater than any debt Xiaomi claims Tekmovil owes to it.

5. Moreover, Xiaomi's illegal, predatory, and retaliatory conduct against Tekmovil, as alleged herein, worked a fraud that vitiated the entirety of the transactions at issue and procured the very default Xiaomi relied upon to call the Letter of Credit.

6. Accordingly, CVI seeks declaratory and preliminary and permanent injunctive relief concerning the Parties' rights and obligations under the Letter of Credit—specifically, that Xiaomi does not have any right to draw on the Letter of Credit and SG is not obligated to honor Xiaomi's draw request.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff CVI CVF V Pooling Fund I LP ("CVI") is an SEC-registered investment fund. CVI is a Delaware limited partnership with its principal place of business at 1601 Utica Avenue South, Suite 1000, Minneapolis, Minnesota, 55416.

8. Defendant Société Générale S.A. ("SG"), is a French financial services group and société anonyme. SG's New York Branch has its principal place of business located at 245 Park Avenue, New York, New York, 10167. SG's registered office is located at 29 Boulevard Haussmann, 75009 Paris, France

9. Defendant Xiaomi H.K. Limited ("Xiaomi") is a major manufacturer of consumer electronics, including cellular telephones. Xiaomi is a Hong Kong limited company, with its principal place of business located at Suite 3209, 32/F, Tower 5, The Gateway, Harbour City, 15 Canton Road, Tsim Sha Tsui, Kowloon, Hong Kong SAR.

10. This Court has personal jurisdiction over Defendant SG because SG's principal place of business is located in New York, New York. Additionally, SG established the Letter of Credit, out of which this action arises, at its counters in this District.

11. This Court has personal jurisdiction over Defendant Xiaomi pursuant to N.Y. CPLR § 302(a) because Xiaomi is a non-domiciliary that transacted business in this state, and this action arises out of those activities. Specifically, Xiaomi is the beneficiary of the Letter of Credit, which was established in its favor in this District. On February 26, 2024, Xiaomi submitted a request to SG to draw on the Letter of Credit, which, if honored, would result in an issuance of from SG's Counters in this District.

12. Additionally, the Letter of Credit provides that it is governed by New York Law and subject to exclusive jurisdiction in New York.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney's fees.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because 1) SG resides in this District and Xiaomi does not reside in the United States; and 2) because the Letter of Credit was entered into, and any funds drawn thereupon would issue from, SG's counters in this District.

15. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

## GENERAL ALLEGATIONS[1]

A. **Xiaomi's Distribution Relationship with Tekmovil.**

16. Xiaomi manufactures cellphones and other electronics in China and Hong Kong for global sale and distribution.

17. Upon information and belief, Xiaomi has few, if any operations in the United States.

18. Tekmovil is a Miami, Florida-based electronics distributor, whose primary distribution channels are in Latin America, including in Mexico, Colombia, Chile, and Peru.

19. Tekmovil began distributing Xiaomi mobile phones in 2019.

20. On May 3, 2020, Tekmovil and Xiaomi entered into a distribution agreement (the "Distribution Agreement," attached hereto as **Exhibit 5**).

21. The Distribution Agreement governs the terms of Tekmovil's purchase and distribution of Xiaomi devices.

22. Tekmovil was one Xiaomi's largest distributors of mobile phones in several Latin American countries.

23. In 2021 alone, Tekmovil purchased over $644,000,000.00 of mobile phones from Xiaomi.

24. On May 18, 2020, Tekmovil and Xiaomi entered into the Market Development Funds Master Agreement ("MDF Agreement," attached as **Exhibit 6**, and together with the Distribution Agreement, the "Agreements").

---

[1] The facts alleged herein accord with those set forth in the Affidavits of Oscar Antonio Rojas, Tekmovil's Co-Founder and Chief Executive Officer, and Wei Wang, Tekmovil's Co-founder and Chief Security Officer, which CVI files in support of Tekmovil's Motion for Temporary Restraining Order and Preliminary Injunction, contemporaneously herewith. The Rojas Affidavit is attached as **Exhibit 3**. The Wang Affidavit is attached as **Exhibit 4**.

25. Under the MDF Agreement, Xiaomi is required to compensate and reimburse Tekmovil for services associated with marketing and advertising Xiaomi products.

26. Xiaomi's relationship with Tekmovil was not a simple supplier-distributor relationship.

27. Tekmovil built its business around the distribution of Xiaomi products.

28. Tekmovil made substantial investments and built the necessary infrastructure to purchase and sell Xiaomi products and, to promote and grow the Xiaomi brand in Latin America.

29. Tekmovil's relationship with the mobile service providers in Latin America served as the backbone for Xiaomi's growth there.

30. By way of example, prior to Tekmovil distributing Xiaomi's mobile phones, Xiaomi had less than a 1% market share for mobile phones in Mexico. As a result of Tekmovil's efforts, Xiaomi's market share grew to over 15% in just three years.

**B. The Letter of Credit**

31. CVI provides lending facilities to Tekmovil.

32. On October 22, 2021, SG established the Letter of Credit, No. NY21SOL12075, (Exhibit 1) in the amount of $52,500,000.00.

33. The Letter of Credit was established for the account of CVI, as Applicant, "for the benefit of" Tekmovil, and in favor of Xiaomi, as Beneficiary.

34. The amount of the Letter of Credit was ultimately reduced to $15,000,000. (*See* **Exhibit 7**, June 28, 2023 Amendment).

35. The Letter of Credit is an irrevocable standby letter of credit that secures the payment of certain invoices for particular Xiaomi brand mobile phones that Xiaomi ships from

China or Hong Kong into Mexico for resale in Mexico under the Distribution Agreement ("Eligible Invoices").

36. The Letter of Credit provides that Xiaomi may draw against the Letter of Credit based on a default by Tekmovil of its obligation to make payment on Eligible Invoices.

37. In order to do so, Xiaomi must send SG a written "certification statement," certifying that the amount of the draft drawn "represents funds due and payable to the beneficiary in respect of eligible invoices (as defined in the Letter of Credit) because Tekmovil LLC has defaulted on its obligation to make payment when due on such eligible invoices for the sale of 'Xiaomi' brand mobile phones to Tekmovil LLC that have been shipped by Xiaomi H.K. Limited from China into Mexico for resale in Mexico and which invoiced amounts are due by Tekmovil to Xiaomi H.K. Limited, pursuant to the Distribution Agreement[.]" (Exhibit 1).

38. Xiaomi's certification statement must attach copies of the related unpaid invoices and corresponding air waybills or similar transportation documents. (*Id.*).

39. Xiaomi must further certify that it has provided Tekmovil with an electronic copy of its certification statement and the supporting documentation at least three days prior to delivering it to SG.

40. In the certification statement, Xiaomi must agree that "any material misstatement made herein shall be a basis for an action against [it] for any losses suffered by the Applicant [CVI]."

**C. Xiaomi's Conduct Vitiated the Transactions and Procured Tekmovil's Alleged Default.**

41. As a result of the global chip shortage, sales of Xioami mobile phones increased dramatically after the onset of COVID-19 pandemic. This led to Xiaomi severely overestimating

6

future demand for its products. As a result, Xiaomi, Tekmovil, and Tekmovil's customers ended up holding a massive oversupply of inventory in 2021 into 2022.

42. Rather than instituting legitimate business practices (such as promotions, product price credits, *etc.*), Xiaomi participated in an illicit scheme to maintain its own profits and ensure that it was able to clear its own inventory to the disadvantage of distributors like Tekmovil, that operated in legitimate business channels.

43. Xiaomi refused Tekmovil's requests for significant marketing promotions and other relief that would help Tekmovil sustain its business and meet its obligations under the Distribution Agreement, in the face of lower than forecasted demand and excess inventory.

44. Xiaomi participated in a scheme to sell its mobile phones, requiring illegal conduct, to sell its built-up inventory through the "gray market."

45. Certain of Xiaomi's distributors illegally falsified import records by understating the quantities and costs of goods they imported.

46. The falsely understated records reduced participating distributors' import tax and VAT on shipments, allowing them to sell Xiaomi's mobile phones at significantly lower prices than distributors like Tekmovil, who refused to participate in this illegal scheme.

47. This resulted in the proliferation of "gray market" sales of Xiaomi products outside of Xiaomi's legitimate, authorized distribution channels, the latter of which included Tekmovil.

48. Xiaomi facilitated the "gray market" sales by, among other things, its employees arranging and attending meetings between the participating distributors and retailers, leading to the retailers purchasing "gray market" goods, to the exclusion of goods sold through official channels.

49. Tekmovil refused to acquiesce to Xiaomi's suggestions that it participate in this illegal importation scheme, which crippled Tekmovil's ability to sell the products that it purchased from Xiaomi under the Distribution Agreement and satisfy Xiaomi's invoices.

50. The price disparities were so large that in most circumstances the same mobile phones sold on the "gray market" retailed for lower prices that Tekmovil's wholesale price. Tekmovil estimates that the retail prices for Xiaomi mobile phones on the gray market were up to 17% lower than the *wholesale* prices Xiaomi charged Tekmovil to purchase and import those products legitimately, making it impossible for Tekmovil to compete for sales.

51. In this manner, Xiaomi vitiated its contractual relationship with Tekmovil by severely impeding Tekmovil's ability to sell Xiaomi products and preventing Tekmovil from recovering sales revenue sufficient to meet its obligations with respect to the Distribution Agreement and the invoices Xiaomi issued thereunder.

52. Tekmovil was forced to absorb significant losses to sell off the excess inventory of Xiaomi products it had accumulated.

53. This resulted in major cash flow problems, as Tekmovil struggled to sustain the financial demands of the infrastructure it had built to support Xiaomi's business (including Tekmovil's obligations to its lenders, such as CVI).

54. Xiaomi's senior executives also solicited bribes from distributors as a condition to continuing to supply them, in the form of cash, expensive luxury goods, and gambling winnings from rigged bets.

55. As further described in the Wang Affidavit (Exhibit 4), Chen BingXu, President of Xiaomi Latin America, approached Tekmovil looking for bribes, including demands that Tekmovil

8

buy him a Louis Vuitton suitcase and cosmetics and pay for his international business class plane tickets, and help secure a visa for his girlfriend.

56. Senior executives of Xiaomi were aware of and encouraged Xiaomi's illicit import scheme.

57. In July of 2023, Chen BingXu, who was Xiaomi's President for Latin America, was placed under investigation for his illegal conduct and fired from Xiaomi.

58. Also, in December of 2023, Chinese authorities took into custody Xiaomi's President of International Business, Xiang Zheng. Xiang was also fired by Xiaomi.

**D. Xiaomi's Actions Against Tekmovil for Refusing Its Entreaties to Engage in Improper and Illegal Conduct**

59. Tekmovil suffered greatly for its refusal to participate in Xioami's illicit scheme, which involved the violation of importation laws and bribery of Xiaomi executives.

60. Knowing that Tekmovil had limited cash flow, in October of 2023, Xiaomi demanded that Tekmovil immediately pay it $17,196,575, for amounts which it claimed were due and owing under the Distribution Agreement.

61. Meanwhile, Xiaomi had steadfastly failed and refused to make payments that are due and owing to Tekmovil under the Agreements for marketing services and expenditures, currency adjustments, and defective products. Collectively, these sums total $14,781,161, which, after accounting for Tekmovil's deposit, is $84,685 more than Xiaomi has claimed Tekmovil owes it.

62. Xiaomi refused to credit its own larger countervailing debt to cancel out its demand to Tekmovil for $17,196,575, which had a longer aging than any of the purported debt Xiaomi claims Tekmovil owed to it.

63. Instead, Xiaomi cut off Tekmovil and refused to supply it with further products.

9

64. Xiaomi made defamatory statements about Tekmovil to Tekmovil's customers, including América Móvil, regarding Tekmovil's business practices and ability to operate.

65. Xiaomi also interfered with Tekmovil's business and contractual relationships by engaging in direct sales to Tekmovil's customers, exploiting, for Xiaomi's sole gain, the years of efforts and millions of dollars Tekmovil expended to curate these relationships.

66. Xiaomi has not exercised good faith or fairness in its dealings with Tekmovil.

67. Xiaomi's willful and illegal undercutting of Tekmovil's business violated the spirit and letter of the Agreements and the entire distribution relationship and relevant sales transactions between Tekmovil and Xiaomi.

**E. Xiaomi's Attempts to Draw on the Letter of Credit:**

68. On February 20, 2024, Xiaomi sent a draft Certification Statement (Exhibit 2) to CVI and Tekmovil, purporting to draw on the Letter of Credit in the amount of $7,976,010.80.

69. On February 26, 2024, Xiaomi submitted a purported request to draw that amount to SG.

70. In deliberate disregard of: i) Tekmovil's well-founded objections to Xiaomi's accounting of Tekmovil's alleged debt; ii) Tekmovil's countervailing demand for $14,781,161, which represents Xiaomi's debt to Tekmovil under the Agreements, iii) Tekmovil's $2,500,000.00 deposit under the Distribution Agreement that Xiaomi is still holding and has not applied to the alleged debt; and iv) Xiaomi's own efforts to frustrate Tekmovil's performance and procure a default, Xiaomi represented in the Statement of Claim that Tekmovil defaulted on its obligation under the Distribution Agreement to make payment under specified Eligible Invoices (the "Invoices").

71. CVI anticipates that SG will honor Xiaomi's draw request on February 28, 2024, in the absence of a declaration from this Court to the contrary.

## COUNT I: DECLARATORY JUDGMENT

72. CVI repeats and re-alleges the allegations of Paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73. This is an action for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Creation of remedy).

74. The Letter of Credit was established by SG, for the account of CVI, in favor of Xiaomi, as beneficiary.

75. Xiaomi agreed in the Letter of Credit and its Certification Statement that any material misstatements in connection with its draw request shall serve as the basis for an action against it for losses suffered by CVI.

76. If SG is not enjoined from making the requested payment to Xiaomi, CVI will not be able to recover in an action against Xiaomi for the losses it will suffer, including because Xiaomi is a foreign company and (upon information and belief) lacks assets in the United States which could be used to satisfy the judgment.

77. An actual, immediate, real, and justiciable controversy exists between CVI, SG, and Xiaomi with respect to the Parties' rights and obligations under the Letter of Credit.

78. Xiaomi has improperly and fraudulently attempted to draw $7,976,010.80 on the Letter of Credit (the "Draw Amount").

79. CVI anticipates that SG will disburse the Draw Amount to Xiaomi, unless this Court declares that Xiaomi has no right to the Draw Amount and enjoins SG from honoring the improper request.

11

80. Moreover, regardless of whether or not SG declines to honor Xiaomi's present draw request, in the absence of declaratory and injunctive relief, Xiaomi may continue to make unsupported draw requests that have no basis in fact and which similarly constitute a fraud in the documentation and in the transaction.

81. As Xiaomi knows, its draw request has no basis in fact.

82. The Letter of Claim intentionally misrepresents amounts that are purportedly owed to Xiaomi by Tekmovil, including as a result of Xiaomi's failure to credit Tekmovil for currency adjustments, defective products, and sums owed for marketing services under the MDF Agreement, as well as Tekmovil's $2,500,000 deposit under the Distribution Agreement, which such sums collectively exceed, and should be set off against any debt that Xiaomi claims Tekmovil owes it.

83. Moreover, Xiaomi's conduct constitutes a fraud in the transaction that has vitiated the relevant transactions between it and Tekmovil, as well as between it and CVI, such that the legitimate purpose of the Letter of Credit is no longer served.

84. Xiaomi frustrated, impeded, and prevented Tekmovil's performance of its alleged obligations and procured Tekmovil's alleged default with respect to the Invoices.

85. Xiaomi should not be permitted to benefit from an alleged default that it, itself, caused through its improper, illegal, and inequitable activities.

86. In attempting to draw on the Letter of Credit, Xiaomi intended to establish fraud on its outright fraudulent conduct.

87. Honor of Xiaomi's draw request would facilitate material fraud by Xiaomi on SG, as issuer, and CVI, as applicant.

88. Xiaomi's draw request poses an actual and imminent threat of irreparable harm to CVI for which it has no adequate remedy at law. New York Uniform Commercial Code Section 5-109(a)(2) permits a bank to refuse to honor a letter of credit in such circumstances.

89. Specifically, upon information and belief, Xiaomi lacks assets in the United States that could or would be used to reimburse and indemnify CVI for any improper draw.

**WHEREFORE,** Plaintiff CVI CVF V Pooling Fund I LP respectfully requests that judgment be entered in its favor as follows:

i. Declaring that Xiaomi has no right to draw on the Letter of Credit and its draw request is null and void.

ii. Declaring that SG has no obligation to honor Xiaomi's claim for payment on the Letter of Credit.

iii. Preliminarily and permanently enjoining SG from honoring Xiaomi's claim for payment on the Letter of Credit.

iv. Preliminarily and permanently enjoining Xiaomi from drawing on the Letter of Credit.

v. Awarding Plaintiff such other relief as this Court deems just and proper.

Dated:  February 27, 2024

Respectfully submitted,

*/s/ Scott N. Wagner*
Scott N. Wagner
**BILZIN SUMBERG BAENA
    PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-3456

Telephone: 305-374-7580
Email: swagner@bilzin.com
Email: eservice@bilzin.com